IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JAMES ROBERT QUINN                                                          PLAINTIFF

VS.                                                    CIVIL ACTION NO.  1:19-cv-253-FKB

ANDREW SAUL, Commissioner of
Social Security                                                              DEFENDANT


**MEMORANDUM OPINION AND ORDER**

**I.  Introduction**

James Robert Quinn filed a claim for disability insurance benefits with the Social

Security Administration ("SSA") on July 21, 2016, alleging an onset date of May 15, 2015.  [7]

at 147-148.[1]  After his application was denied initially and upon reconsideration, he requested

and was granted a hearing, which was held on April 25, 2018, before an administrative law judge

("ALJ").  *Id.* at 26-66.  On August 1, 2018, the ALJ issued a decision finding that Quinn was not

disabled.  *Id.* at 11-21.  The Appeals Council denied review.  *Id.* at 1-3.  Plaintiff brought this

appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The parties have filed their briefs and notices of supplemental authority, and this matter is

ripe for review.  *See* [11], [12], [13], [14], [15], [16].  Having considered the memoranda of the

parties and the administrative record, the Court hereby grants Plaintiff's Motion for Summary

Judgment [11].  Accordingly, the decision of the Commissioner is reversed and remanded for

further consideration.

---

[1] Citations are to the original pagination of the administrative record.

## II.  Facts and Evidence

Quinn was born on July 27, 1956, and he was 62 years old at the time of the ALJ's

August 1, 2018, decision.  *Id.* at 21, 147.  He meets the insured status requirements of the Social

Security Act through December 31, 2020.  *Id.* at 13.  Quinn has at least a high-school education,

and he was 58 years old on May 15, 2015, his alleged onset date.  *Id.*at 18-19.  His past relevant

work was as a construction project manager and contractor for his own company. *Id.* at 19; 166.

He also had some work experience as an insurance sales agent, floor covering salesperson, and

hardware salesperson.  *Id.* at 19, 32.

In his July 2016 application for benefits, Quinn alleged that he was disabled because of

two degenerating discs in his lower back, an aortic aneurysm, and degenerative disease of his

right shoulder.  *Id.* at 165.  Medical records substantiate these conditions.  *Id.* at 233-283, 287-

319.  While he has not had surgery on his lower back, in August 2016, an orthopedic surgeon

performed a right shoulder decompression and Mumford procedure (distal clavicle excision or

resection) on him, with some success.  *Id.* at 304, 311.

After experiencing shortness of breath in January 2017, he sought treatment with a

cardiologist.  *Id.* at 487-488.  A January 2017 cardiology stress test showed multiple heart

defects that were non-reversible.  *Id.* at 542.  In February 2018, he complained to his cardiologist

about chest pain not related to exertion.  *Id.*  A second stress test performed in February 2018

was "abnormal," but insurance denied coverage for an angiogram.  *Id.* at 598.  He had a follow-

up examination with his cardiologist on March 19, 2018, at which time he complained of chest

pain at rest, sometimes after eating.  *Id.*  His doctor rescheduled the angiogram for April 4, 2018.

*Id.* at 601.  Within hours of his March 19 cardiology appointment, Quinn sought treatment at a

hospital, where doctors performed a coronary artery bypass graft on March 22.  *Id.* at 35, 623.

Quinn was discharged home on April 1, 2018, with instructions not to lift greater than ten pounds

for six weeks, and to engage in activity only as tolerated.  *Id.* at 626.

On April 25, 2018, the ALJ conducted the hearing in Plaintiff's case, where a non-

attorney representative appeared on Quinn's behalf.  *Id.* at 26.  At the hearing, Quinn described

how he had been on pain medications for over ten years for mid- and low-back pain, including

shooting pain in his legs.  *Id.* at 37.  Quinn related how his aortic aneurysm had increased from

2.98 cm in April 2017 to 4 cm in February 2018.  *Id.* at 37-38. At the time of his heart surgery,

the aneurysm measured 4.3 cm.  *Id.* at 38.  Quinn testified that he tries not to drive due to his

pain medication.  *Id.* at 40-41.  He testified that his pain and the pain medication make it difficult

to focus.  *Id.* at 41, 43-44.  He also testified that he is unable to do household chores or cook,

although he can help with the laundry.  *Id.* at 41-42.  He must alternate between sitting and

standing due to his pain.  *Id.* at 45.  He testified that he had no hobbies, because his former hobby

was running his business.  *Id.* at 42.

Dr. Harold Coulter performed a consultative examination on Quinn in August 2016,

within weeks of his shoulder surgery, and nineteen months prior to his heart surgery.  *Id.* at 280-

283.  The doctor diagnosed Quinn with right shoulder osteoarthritis and abdominal aortic

aneurysm.  *Id.* at 283.  Quinn also reported history of Wolff-Parkinson-White syndrome, a

condition in which an extra electrical pathway exists between the heart's upper and lower

chambers, resulting in a rapid heartbeat.  *See* https://www.mayoclinic.org/diseases-

conditions/wolff-parkinson-white-syndrome/symptoms-causes/syc-20354626.  At that time, the

consultative examiner found that Quinn's conditions would impose certain limitations, as

follows:  standing/walking up to four hours in a day; sitting up to four hours in a day; maximum

lifting/carrying capacity of 20 pounds occasionally, 10 pounds frequently for his left arm;

postural activities of four to six hours, frequently; manipulative activities for six hours,

frequently; and no limitations on workplace environmental activities. [7] at 283.

### III.  The Decision of the ALJ

In evaluating Plaintiff's claim, the ALJ worked through the familiar sequential evaluation

process for determining disability.[2]  The ALJ found that Quinn had the following severe

impairments:  right shoulder impingement, degenerative disc disease of the lumbar spine,

cervical spine, and thoracic spine, abdominal aortic aneurysm, chronic pain syndrome, status

post quadruple bypass surgery.  *Id.* at 13.  The ALJ concluded that the record evidence failed to

meet Listings 1.02 (musculoskeletal system – major dysfunction of joints), 1.04 (disorders of the

---

[2] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1)      whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2)      whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3)      whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4)      whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5)      whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. § 416.920.  The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining her burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

spine), 4.10 (aneurysm of aorta or major branches, with dissection not controlled by prescribed treatment), and 4.04 (ischemic heart disease). *Id.* at 14-15.

The ALJ found that Plaintiff has the residual functional capacity to perform light work, except that Plaintiff can stand and walk for four hours in an eight-hour day. *Id.* at 15. The ALJ determined that Plaintiff can sit up to four hours out of an eight-hour workday, can occasionally climb ramps and stairs, and can never climb ladders, ropes or scaffolds. *Id.* He can occasionally balance, stoop, kneel, crouch, and crawl. *Id.* He can never work at unprotected heights or around dangerous moving machinery. *Id.* He can perform occasional overhead reaching with the right upper extremity. *Id.* The ALJ concluded that Plaintiff's statements about the limiting effects of his symptoms were not consistent with the record as a whole, and she specifically noted that Quinn did not describe ongoing cardiac issues at the April 2018 hearing, despite bringing oxygen with him to the hearing. *Id.* at 16, 35-36. In addition, the ALJ cited that there was "no evidence in the medical record to suggest that the claimant did not recover well from" his heart surgery. *Id.* at 18. The ALJ gave "significant weight" to the consultative examiner, Dr. Coulter, who examined Plaintiff in August 2016, long before his March 2018 heart surgery. *Id.* The ALJ gave "some weight" to the state agency medical consultants, who made their decisions based on the medical records as of September and November 2016. *Id.* at 95, 103.

The ALJ found that Plaintiff is unable to perform any of his past work as an insurance sales agent, a floor covering salesperson, a hardware salesperson, a contractor, or a self-employed construction project manager. *Id.* at 19. At the time of his 2015 onset date, Quinn was 58 years old, which is defined as "an individual of advanced age." *Id.* The ALJ noted that Plaintiff has at least a high school education, can communicate in English, and has acquired

work skills from past relevant work.  *Id.*  Considering his age, education, work experience, and residual functional capacity, and after consulting with a vocational expert, the ALJ found other jobs in the economy that Plaintiff can perform.  *Id.* at 19-20.  The ALJ identified the jobs of insurance investigator (skilled, light), insurance broker selling insurance (skilled, light), and insurance clerk (skilled, sedentary) as ones that Plaintiff can perform.  *Id.* at 20.  Accordingly, the ALJ found that Plaintiff was not under a disability from May 15, 2015, to the date of the decision, August 1, 2018.  *Id.* at 20-21.

### IV. Standard of Review

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied, 42 U.S.C. § 405(g) (2006).  *Accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).  In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.  *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).  Hence, if the Commissioner's decision is supported by the evidence, and the proper legal

standards were applied, the decision is conclusive and must be upheld by this Court.  *Paul v.*

*Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S.

103 (2000).

## V. Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for the

following reasons:

1.  Quinn's past job as an insurance salesman was not performed long enough to constitute past relevant work, thus it could not be a source of transferrable skills at Step Five.

2.  The ALJ erred in failing to develop the record related to Quinn's cardiac impairment.

3.  The presiding ALJ was not properly appointed under the Constitution and, therefore, lacked legal authority to hear and decide the case.

The Court first considers Plaintiff's argument that the ALJ failed to develop the record

related to Quinn's cardiac impairment.  The Fifth Circuit "imposes a duty on an ALJ 'to develop

the facts fully and fairly relating to an applicant's claim for disability benefits.'"  *Newton v.*

*Apfel*, 209 F.3d 448, 457(5th Cir. 2000)(citations omitted).  When the ALJ does not satisfy this

duty, her decision is not substantially justified.  *Id.*  However, reversal "is appropriate only if the

applicant shows prejudice from the ALJ's failure to request additional information."  *Id.*

"Prejudice can be established by showing that additional evidence would have been produced if

the ALJ had fully developed the record, and that the additional evidence might have led to a

different decision."  *Id.*

While records from Quinn's March 2018 cardiac surgery and hospital stay are in the

record, there is no medical opinion, either consultative or treating, to shed light on Quinn's

cardiac condition or its impact on his ability to engage in work.  The state agency and

consultative medical opinions pre-date his cardiac surgery by more than a year and a half.

Without such opinion evidence, the ALJ lacked the requisite evidentiary basis to assess the

impact of Quinn's cardiac condition, and "an ALJ should not substitute his lay opinion for the

medical opinion of experts . . . ." *Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018).  "Even

though the 'ALJ is free to reject the opinion of any physician when the evidence supports a

contrary conclusion,' the issue here is that there is insufficient evidence to support the ALJ's

conclusion."  *Id.* at 819 (citations omitted).  It follows, therefore, that the ALJ's decision is not

supported by substantial evidence, and this case should be reversed and remanded for further

consideration by the Commissioner.[3]

Plaintiff also argues that the presiding ALJ was not properly appointed under the

Constitution and, therefore, lacked the legal authority to hear and decide the case.  *See Lucia v.

S.E.C.*, 138 S. Ct. 2044 (2018)(finding that the S.E.C.'s ALJs are "Officers of the United States,"

subject to the Appointments Clause of the Constitution, and who should have been – but were

not – appointed to their positions by either the President, a court of law, or the Department

head).[4]  Plaintiff, however, did not make an Appointments Clause challenge before the Appeals

Council, and thus, the government asserts that Quinn has waived the argument before this Court.

While the Fifth Circuit has yet to address this issue, this Court has found that failure to

raise this argument during the administrative appeal constitutes waiver. *See Williams v.

Berryhill*, Civ. Action No. 2:17cv87-KS-MTP, 2018 WL 4677785, *2 (S.D. Miss. Sept. 28,

---

[3] Because the Court reverses and remands on this basis, it declines to address Plaintiff's argument that his insurance sales job did not constitute past relevant work.

[4] On July 16, 2018, in the wake of *Lucia,* the acting SSA Commissioner ratified the appointments of SSA ALJs and Appeals Council administrative appeals judges and approved their appointments as her own in order to address any Appointments Clause questions involving Social Security claims. *See* SSR 19-1p, 2019 WL 1324866 (Mar. 15, 2019)(noting same; setting forth procedure to consider Appointments Clause challenges before Appeals Council).

2018)("Plaintiff did not assert or challenge the ALJ's appointment before the agency and this

claim is waived."); *Vega v. Comm'r*, Civ. Action No. 1:18cv395-MTP, 2020 WL 4550907 (S.D.

Miss. Aug. 6, 2020)(citing *Carr v. Comm'r*, 961 F.3d 1267 (10th Cir. 2020) and *Davis v. Saul*,

963 F.3d 790 (8th Cir. 2020)(both cases finding that SSA claimants waived Appointments

Clause challenges when they failed to raise them during administrative proceedings.)).

Accordingly, this argument does not provide a basis for remand or reversal.

### VI.  Conclusion

For the reasons stated above, the Court grants Plaintiff's Motion for Summary Judgment

[11] and hereby remands this matter to the Commissioner for further consideration.  A separate

judgment will be entered.  Fed. R. Civ. P. 58.

SO ORDERED, this the 27th day of August, 2020.

 /s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE